■ Scott Reeves, Appellant, v 1700 First Avenue LLC et al., Respondents. [37 NYS3d 262]—

Order, Supreme Court, New York County (Debra A. James, J.), entered October 15, 2014, which granted defendants' motion for summary judgment dismissing the complaint, and order, same court and Justice, entered July 10, 2015, which, upon reargument, adhered to the original determination, affirmed, without costs.

Plaintiff alleges that, on January 13, 2011, he tripped over a carpet that was not lying flush with the floor in the lobby of defendants' building. Defendants made a prima facie showing that they did not create a dangerous condition and had no actual or constructive nogtice of the alleged defective condition of the carpet (*Langer v 116 Lexington Ave., Inc.*, 92 AD3d 597, 598 [1st Dept 2012], *lv denied* 24 NY3d 907 [2014]). The doorman on duty testified that he observed the carpet, used when there was inclement weather, in its usual location between the door and the elevator less than an hour before the accident and that he did not notice any part of the carpet that was not lying perfectly flat in the area of the elevators (*see Budd v Gotham House Owners Corp.*, 17 AD3d 122 [1st Dept 2005]; *Denker v Century 21 Dept. Stores, LLC*, 55 AD3d 527 [2d Dept 2008]). He also testified that he did not remember having ever seen a carpet whose corners were not lying flat to the floor at any time during January 2011. Nor did he ever see anyone use tape to keep the corners of the carpet down. Defendants also pointed to plaintiff's testimony that the first time he saw a portion of the carpet raised was when the doorman helped him after he fell (*see Spagnola v Staten Is. Hosp.*, 84 AD3d 1057 [2d Dept 2011]).

In opposition, plaintiff failed to raise a triable issue of fact

(*see Aniello v 1370 Broadway Assoc. Corp.*, 28 AD3d 383 [1st Dept 2006]). Plaintiff testified that he never saw the carpet in the lobby before, that he did not feel any defect in the carpet before or during the accident, and that he was unsure of the exact cause of his fall. While plaintiff first testified that his accident occurred when his right foot "caught" on a corner of the carpet that was turned up, he later clarified that he did not recall whether he felt any part of his right foot make contact with the carpet immediately before he fell. Plaintiff's postaccident observations of the carpet are mere speculation, and fail to create a triable issue of fact as to whether a dangerous condition existed before his fall (*see Vazquez v Genovese Drug Stores, Inc.*, 88 AD3d 467 [1st Dept 2011]; *Goldfischer v Great Atl. & Pac. Tea Co., Inc.*, 63 AD3d 575 [1st Dept 2009]; *Drago v DeLuccio*, 79 AD3d 966 [2d Dept 2010]).

The photographs of the carpet in the record were not taken by plaintiff and his girlfriend until several days after the accident. At that time, plaintiff saw a carpet rolled up against a wall near the manager's office, took it down and rolled it out. Thus, assuming the photographs were of the allegedly offending carpet, they are not probative of the condition of the carpet as it was laid out in the lobby at the time of the accident. Furthermore, plaintiff did not allege that there was tape on the corner of the carpet at the time of his accident until he submitted an affidavit in opposition to defendants' motion for summary judgment. Plaintiff has also failed to offer any evidence, expert or otherwise, to support the claim that the configuration of the carpet made it more likely that its corner would become turned-up. Concur—Friedman, J.P., Andrias and Webber, JJ.

Moskowitz and Kapnick, JJ., dissent in a memorandum by Kapnick, J., as follows: I respectfully disagree and would reverse the motion court's order granting defendants' motion for summary judgment dismissing the complaint and reinstate the complaint.

On the record in this case, I find that defendants did not meet their initial burden of demonstrating that they did not create a dangerous condition, or have actual or constructive notice of the alleged condition of the carpet.

Plaintiff testified that as he stepped out of the elevator into the building lobby on the night of January 13, 2011, his right foot "caught the carpet" that was raised about three to four inches and he fell. Plaintiff also testified that the carpet had been placed by one of defendants' employees in such a way that it laid at an angle to the elevator door. Plaintiff's observation

of the curled rug after he fell, together with his testimony that he fell because his foot "caught" the raised carpet, and the doorman's testimony that plaintiff immediately attributed his fall to "that damn rug," is sufficient to raise a triable issue of fact as to the existence of a dangerous condition (*see Yoon Peng Choo v Fiedler Cos., Inc.*, 123 AD3d 529 [1st Dept 2014]; *Shapiro v Boulevard Hous. Corp.*, 70 AD3d 474, 475-476 [1st Dept 2010]; *Kamin v James G. Kennedy & Co., Inc.*, 52 AD3d 263 [1st Dept 2008]). This case is distinguishable from the facts in *Goldfischer v Great Atl. & Pac. Tea Co., Inc.* (63 AD3d 575, 575 [1st Dept 2009]), where the plaintiff was "[u]naware of what caused her fall" and merely "surmised" that it was caused by a bump in a rubber floor mat which she observed for the first time after she fell. The Court in *Goldfishcher* found that the plaintiff's failure to identify the condition that caused her fall was fatal to her claim. That is not the situation here.

Plaintiff also identified photographs of the carpet that he and his girlfriend took at some point not too long after the accident, which showed an upturned corner with a piece of tape on it. Plaintiff stated that he had found the carpet rolled up against a wall in the lobby, and that he took it down and rolled it out before taking the pictures. To the extent the majority questions whether the pictures in the record were actually pictures of the offending carpet, the doorman testified that the building had only two carpets for the lobby area, and while they were both the same color, a much smaller one was used in the area between the two sets of front doors, while a larger one was placed in the lobby between the second set of doors and the elevators when it was raining or snowing outside. There was no other evidence contradicting the doorman's testimony. Plaintiff also stated in his affidavit that immediately after his fall, the doorman, who came to assist him, observed the rolled up corner of the carpet and attempted to make it lay flat with his foot, but was unable to do so. The doorman, on the other hand, testified that at no time after the accident, which occurred around 11:30 p.m., until his shift ended at 7:00 a.m., did he look at the carpeting on the floor immediately outside the elevator.

Although plaintiff did not specifically state that there was tape on the corner of the carpet at the time of his fall until he submitted his affidavit in opposition to defendants' summary judgment motion, and, despite the fact that the doorman testified that he did not remember ever seeing a carpet, including on the night of plaintiff's accident, whose corners were not laying flat with the floor, and never saw the carpet with tape on

it, plaintiff's affidavit is not contradicted by his deposition testimony and is sufficient to raise an issue of fact as to whether defendants actually created the condition or had notice of its existence.